UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GERALD W. EASTMAN,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )    No.  4:10CV906 FRB
                                      )
PATRICK R. DONAHOE, Postmaster        )
General,                              )
                                      )
                Defendant.            )


## MEMORANDUM AND ORDER

        Presently pending before the Court is defendant's Motion
for Summary Judgment (Doc. #18).  All matters are pending before
the undersigned United States Magistrate Judge, with consent of the
parties, pursuant to 28 U.S.C. § 636(c).

        Plaintiff Gerald W. Eastman brings this action pursuant
to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq.;
and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§
623(a), et seq., alleging that his employer, the United States
Postal Service, unlawfully discriminated against him in his
employment and subjected him to harassment and a hostile work
environment on account of his gender and age.  Plaintiff also
brings a claim under 5 U.S.C. § 2302(b)(8) alleging that defendant
retaliated against him in his employment for "whistle blowing," by
subjecting him to abusive conduct upon his reporting of illegal
activities committed by Postal Service management personnel.
Defendant now moves for summary judgment arguing that there are no

genuine issues of material fact and that it is entitled to judgment as a matter of law.  Plaintiff has responded to the motion to which defendant has replied.

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial.  Id.  The non-moving party may not rest upon his pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion.  Celotex, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy."  New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977).  The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually

insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

## I. Background

At all times relevant to this cause, plaintiff Gerald W. Eastman was employed as a mail processing dispatch clerk at the Town and Country branch of the post office in Chesterfield, Missouri. At all times relevant, plaintiff was over forty years of age. (Pltf.'s Compl., para. 5; Admitted Facts, paras. 2, 3.) During the period alleged in the Complaint, Harold Clark was plaintiff's supervisor. Deborah Hayden was the branch manager. (Admitted Facts, paras. 8, 10.) Hayden left the Town and Country branch in June or July 2008 and transferred to Miami. Plaintiff has had no contact with her since that time. (Deft.'s Exh. D, Hayden Depo. at 6; Pltf.'s Exh., Pltf.'s Depo. at 86-87.)

On August 11, 2006, plaintiff observed Postal Service management "dumping undelivered bulk mail without checking the mail for first class mis-sorts," a violation of Postal Service policy. Plaintiff reported this conduct to postal inspectors. (Admitted Facts, para. 4.) Plaintiff claims that it was this occurrence which triggered a series of discriminatory events in his employment. In the instant Complaint, plaintiff specifically claims that, subsequent to plaintiff's report of August 11, 2006,

defendant engaged in the following discriminatory conduct toward him:

* reassignment to window training, an undesirable position, on August 12, 2006

* immediate rescheduling of shift to prevent plaintiff from attending St. Louis Blues games and to prevent plaintiff from fulfilling high school coaching duties

* denied opportunity to obtain overtime pay

* awarded overtime to younger and/or female employees

* denied requested transfer to another branch

* awarded overtime in September 2008 to two employees not on the Overtime Desired List, Dennis Flamm and Tom Kaatman

* subjected to hostile work environment

## II. Evidence Before the Court on the Motion

Plaintiff claims that immediately upon complaining of the mail-dumping incident on August 11, 2006, the Postal Service changed his schedule so as to interfere with his personal life. (Compl. at paras. 17-20.) Plaintiff's hours were changed such that his shift ended at 6:15 p.m., forty-five minutes later than the shift to which he was previously scheduled. Plaintiff claims that there was no work to be done for those forty-five minutes and that, for "a couple years," he "sat by the time clock" during such time. (Deft.'s Exh. B, Pltf.'s Depo. at 39.) Plaintiff claims that the later shift affected his personal life, specifically interfering

with his group season ticket holdings for the St. Louis Blues professional hockey team, as well as his coaching of high school and youth club hockey. (Pltf.'s Exh., Pltf.'s Depo. at 44.) Plaintiff gave up his Blues season tickets in 2009 due to the team's poor performance, time constraints imposed by his high school team, and the inability to arrive at games at a reasonable time. Plaintiff left his high school coaching job in January 2011 due to the stress involved and the fact that his children no longer participate. Plaintiff continues as a youth coach. (Pltf.'s Exh., Pltf.'s Depo. at 46-50.)

Plaintiff also claims that subsequent to his reporting of the mail-dumping incident and throughout 2006, 2007 and 2008, he was denied scheme training and business reply training in the Postal Service while junior employees younger than he were provided such training. Plaintiff does not know the specific dates upon which he was denied training. At no time did plaintiff report to the EEO that he was denied training opportunities. (Deft.'s Exh. B, Pltf.'s Depo. at 18-21.)

At the Postal Service, an Overtime Desired List ("ODL") is posted each quarter. Postal employees desiring periods of overtime during that quarter may sign the ODL and indicate the category of overtime for which they would be willing to work.[1]

---

[1]The three categories of overtime are: willingness to work up to ten hours, willingness to work up to twelve hours, and willingness to come in on an otherwise non-scheduled work day. (Deft.'s Exh. B, Pltf.'s Depo. at 54-55.)

Postal workers earn pay-and-a-half for overtime work, and penalty pay for overtime work in excess of ten hours a day or fifty-six hours a week. Workers earn double pay for penalty overtime. (Deft.'s Exh. B, Pltf.'s Depo. at 52-55; Deft.'s Exh. E, CBA, Art. 8.4.) Employees on the ODL are chosen to work overtime on a rotational basis by seniority. The rotation is intended to provide equal *opportunities* to work overtime and does not necessarily result in an equal number of overtime *hours.* (Deft.'s Exh. D, Hayden Depo. at 10; Deft.'s Exh. E, CBA, Art. 8.5.) Persons not on the ODL may be required to work overtime in the event persons listed on the ODL are unavailable to work or would otherwise exceeded the total number of work hours allowed. (Deft.'s Exh. E, CBA, Art. 8.5.) The Postal Service is not required to use employees on the ODL at the penalty overtime rate if other qualified employees on the ODL not yet entitled to the penalty rate are available for the assignment. (Id.)

From 2006 to 2008, plaintiff repeatedly placed his name on the ODL and never declined an offer to work overtime. (Pltf.'s Exh., Pltf.'s Depo. at 89-90.) Plaintiff claims, however, that his supervisor, Harold Clark, awarded overtime hours to younger employees as ordered by his superior, Deborah Hayden. (Deft.'s Exh. B, Pltf.'s Depo. at 25-27.)

Plaintiff earned overtime pay in the majority of pay periods since 2006, but claims that he did not earn the amount to

which he was entitled. (Deft.'s Exh. B, Pltf.'s Depo. at 67; Admitted Facts, para. 12.) Plaintiff does not know whether he has worked overtime for penalty pay since March 2008. (Pltf.'s Exh., Pltf.'s Depo. at 55.) Plaintiff claims that his inability to earn sufficient overtime pay affected his ability to pay his children's college tuition. (Pltf.'s Exh., Pltf.'s Depo. at 51.)

Plaintiff filed union grievances regarding overtime opportunities in March, April, June, and July 2008. As of June 2011, the grievances remained pending and unresolved. Plaintiff specifically complained that he was being passed over for overtime assignments and that such assignments were given to non-ODL employees. Both male and female non-ODL employees were given overtime assignments during this period. (Deft.'s Exh. D, Hayden Depo. at 11-12; Deft.'s Exh. B, Pltf.'s Depo. at 23-24; Pltf.'s Exhs., Grievances.) Plaintiff does not know the ages of the employees who were provided overtime work, but "would say" that most of them were under forty years of age. (Pltf.'s Exh., Pltf.'s Depo. at 59-60.) Plaintiff claims that younger employees worked more overtime hours than he, but is unaware of the exact number of hours. (Deft.'s Exh. B, Pltf.'s Depo. at 67.)

Plaintiff also claims that from 2006 to 2008, Harold Clark himself performed work in violation of union rules, which resulted in additional pay being withheld from plaintiff. Plaintiff claims that Clark performed such work because of an

existing perception that plaintiff was slow and not fast enough, which plaintiff considered to be an age-related perception. (Deft.'s Exh. B, Pltf.'s Depo. at 25-27.) Deborah Hayden testified that she considered plaintiff to be slow and deliberate with his work. (Pltf.'s Exh., Hayden Depo. at 29-30.) Other than this perception, plaintiff has no evidence that Clark performed such work out of discriminatory animus. (Pltf.'s Exh., Pltf.'s Depo. at 28.)

There is no dispute that plaintiff and Harold Clark disagreed as to the proper way mail was to be processed. Clark described plaintiff as having "a hard time" with changes in postal policies and wanting to proceed with mail processing as it had always been performed. (Pltf.'s Exh., Clark Depo. at 32.) Deborah Hayden recalled plaintiff occasionally "buck[ing] against the rules," but could not recall any specific instances. (Deft.'s Exh. D, Hayden Depo. at 9.) Overall, however, Clark felt that plaintiff was a good employee, did his job well and cared about what he did. (Pltf.'s Exh., Clark Depo. at 33.)

On a date unknown, plaintiff applied for a transfer to the Fenton branch of the Postal Service and was notified on September 10, 2007, that he was being considered for a carrier position at that branch. Plaintiff was advised that his transfer had been approved, and he began training and underwent a physical in preparation for the transfer. On October 9, 2007, plaintiff was

notified that his requested transfer had been denied on account of his "unacceptable Work Record and Attendance Record[.]"  On a date unknown, a female employee younger than plaintiff was transferred to the Hazelwood branch.  Plaintiff believes this employee to have had an unfavorable work record.  Plaintiff does not know the specific position at the Hazelwood branch to which this employee was transferred. (Deft.'s Exh. B, Pltf.'s Depo. at 36-38; Deft.'s Exh. C, Letters.)  Plaintiff has made no other requests for transfer. (Pltf.'s Exh., Pltf.'s Depo. at 87-88.)

With respect to transfers within the Postal Service, the receiving branch makes the determination as to whether to accept an employee seeking transfer. (Deft.'s Exh. D, Hayden Depo. at 18-19.)  When considering a request for transfer, the receiving branch obtains the employee's personnel file, an evaluation from the employee's supervisor and other information. (Pltf.'s Exh., Clark Depo. at 34-35.)  With respect to plaintiff's requested transfer to the Fenton branch, Harold Clark completed a short evaluation of plaintiff and sent it to the postal employment office.  Within the evaluation, Clark reported that plaintiff was a very knowledgeable employee with no major attendance problems. (Id. at 36.)

In April and May 2008, plaintiff underwent training and physical assessment for reassignment.  Plaintiff was not reassigned within the Postal Service at that time due to a significant number of other postal employees being reassigned from another facility to

available positions. Harold Clark did not complete an evaluation of plaintiff regarding this possible reassignment. (Pltf.'s Exh., Clark Depo. at 37-39.)

Plaintiff claims that from 2006 to 2008, but on unknown dates, he was subjected to bullying which amounted to harassment. Plaintiff claims that two custodians were told not to speak to him. Plaintiff assumes that such directive came from Deborah Hayden. Plaintiff claims that his work was over-scrutinized and he was isolated, followed and timed, and was not provided help to complete his work. Plaintiff claims that the Postal Service changed his schedule to affect his personal life, lengthened his lunch, and withheld training and overtime. Plaintiff believes that such harassment occurred because he angered Hayden and "she turned the office around on top of [him.]" (Deft.'s Exh. B, Pltf.'s Depo. at 84-87.)

On March 19, 2008, plaintiff signed an EEO "Complaint of Discrimination in the Postal Service" in which he claimed that he was being discriminated against on account of his gender and age, and in retaliation for filing an EEO Complaint. Plaintiff claimed that the alleged acts of discrimination took place on February 15, 2008. In his EEO Complaint, plaintiff specifically recited the mail-dumping incident of August 11, 2006, and claimed that his reporting of the incident put his office manager, Deborah Hayden, "on a path of revenge toward [him]" as demonstrated by his

immediate reassignment to window training, a job plaintiff considered to be undesirable; a change in working hours resulting in disruption to plaintiff's personal life, including season hockey tickets and high school coaching; withheld manpower creating difficulties for plaintiff to complete his job; bullying tactics, such as stalking, staring, meddling, eavesdropping, and constant attention; and assignments to perform other work with resulting criticism that the work from his original job remained undone. Plaintiff also claimed in the EEO Complaint that Hayden eliminated plaintiff's overtime which resulted in a limitation of plaintiff's earning power. Plaintiff also claimed that his request to transfer to another postal facility was denied "[d]ue to [his] unacceptable Work Record and Attendance Record," despite his formidable work record and the fact that he had never received any discipline for attendance problems and had received numerous awards for his service. Plaintiff claimed that a younger female with recorded attendance problems was approved for transfer. Plaintiff reported in his EEO Complaint that he contacted the EEO in early February 2008 for help with the "unbearable" situation. Plaintiff claimed that on the same date he complained to the EEO, two supervisors met him at the time clock and threatened that his job would be taken from him unless he met unrealistic work performance goals. Plaintiff reported that he construed this as a threat for making a complaint to the EEO. (Deft.'s Exh. A, EEO Complaint.)

An EEO investigation conducted in response to plaintiff's EEO Complaint showed plaintiff to complain of being denied the opportunity to work overtime since January 1, 2008. The investigative report shows the following with respect to overtime opportunities and hours during the period March – May 2008:

| Employee | Birth Year | Gender | Opportunities | Hours | ODL |
|----------|-----------|--------|---------------|-------|-----|
| Eastman | 1956 | M | 7 | 10.62 | Yes |
| J.B. | 1960 | M | 9 | 35.54 | Yes |
| D.F. | 1964 | M | 5 | 14.81 | Yes |
| S.G. | 1949 | F | 5 | 8.0 | Yes |
| T.G. | 1967 | F | 6 | 10.18 | No |
| T.K. | 1957 | Unk. | 6 | 13.45 | Yes |
| K.L. | 1969 | Unk. | 2 | 0.55 | Yes |
| A.R. | 1946 | Unk. | 0 | 0.00 | No |
| R.R. | 1970 | M | 3 | 4.19 | No |
| B.S. | 1951 | Unk. | 7 | 11.69 | Yes |
| W.S. | 1951 | M | 5 | 11.96 | Yes |
| Y.S. | 1954 | F | 4 | 3.18 | Yes |
| A.T. | Unk. | Unk. | 0 | 0.00 | No |
| M.W. | 1961 | Unk. | 0 | 0.00 | No |

(Deft.'s Exh. F.)

### III.  Discussion

In this cause of action, plaintiff brings claims under Title VII, the ADEA and the Whistleblower Protection Act alleging that he was subjected to disparate treatment and a hostile work environment on account of his gender and age, and was retaliated

against for reporting illegal activities and for filing an EEO Complaint. Defendant moves for summary judgment on each claim arguing, specifically, that plaintiff does not have a cause of action under the Whistleblower Protection Act and, further, cannot demonstrate a *prima facie* case of retaliation nor of gender or age discrimination. The Court will address each of defendant's contentions in turn.

A.    Whistleblower Protection Act

In his Complaint, plaintiff claims that defendant retaliated against him in his employment for engaging in whistle blowing activities, and specifically, for reporting to postal inspectors in August 2006 that management personnel had engaged in illegal dumping of mail. Plaintiff claims that retaliation for reporting such conduct is expressly prohibited under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).

Section 2302 makes it a "prohibited personnel practice" for a government agency to take adverse personnel action against an employee because of that employee's disclosure of information which the employee reasonably believes evidences a violation of any law, rule, or regulation.    5 U.S.C. § 2302(a), (b)(8)(A)(i).    A personnel action may be considered a "prohibited personnel practice" only if it occurs within an "agency" as that word is defined in the statute. The definition of "agency" in 5 U.S.C. § 2302(a)(2)(C) does not include the United States Postal Service,

which is specifically excluded from the generally applicable
definition of "executive agency" in 5 U.S.C. § 105 by virtue of its
exclusion from the definition of "independent establishment" in 5
U.S.C. § 104.  <u>Booker v. Merit Sys. Prot. Bd.</u>, 982 F.2d 517, 519
(Fed. Cir. 1992).  <u>See also</u> <u>Oslowski v. Merit Sys. Prot. Bd.</u>, 117
Fed. Appx. 748 (Fed. Cir. 2004).  "Where Congress intended the
Postal Service to be included within the definition of 'agency' or
to be subject to particular provisions of Title 5, it explicitly so
provided.  Its absence from the section 2302 definition could only
have been intentional in light of this congressional practice."
<u>Booker</u>, 982 F.2d at 519 (citations omitted).

Because the Whistleblower Protection Act is not applicable
to the Postal Service, plaintiff, a Postal Service employee, cannot
bring an independent action against the Postal Service under the
Act based on whistle blowing activities.  Defendant is therefore
entitled to judgment as a matter of law on plaintiff's claim of
retaliation under the Whistleblower Protection Act.  <u>Madden v.
Runyon</u>, 899 F. Supp. 217, 225 (E.D. Pa. 1995) (citing <u>Booker</u>, 982
F.2d at 519).

B.    <u>Retaliation under Title VII and the ADEA</u>

Plaintiff's Complaint does not raise a specific claim of
retaliation under Title VII or the ADEA, and instead raises only
disparate treatment claims thereunder.  Defendant has moved for
summary judgment, however, on Title VII and ADEA claims of

retaliation. Plaintiff appeared to raise such a retaliation claim in his EEO Complaint of Discrimination and, further, analyzes his retaliation claim under Title VII in his brief in opposition to defendant's Motion for Summary Judgment. Out of an abundance of caution, therefore, the undersigned will address what could be construed as claims of retaliation arising under Title VII and the ADEA.

To establish a *prima facie* case of retaliation under Title VII or the AEDA, plaintiff must show 1) that he engaged in protected conduct, 2) that reasonable employees would have found the challenged retaliatory action materially adverse, and 3) that the materially adverse action was causally linked to the protected conduct. Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)); Stewart v. Independent Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007).

1. *August 2006 Report to Postal Inspectors*

To the extent plaintiff claims that defendant retaliated against him for reporting the mail-dumping incident to postal inspectors in August 2006, such report did not constitute protected conduct under Title VII or the ADEA. For retaliation to be actionable under Title VII or the ADEA, the complaints which lead to such alleged retaliation must relate to conduct protected under

the statutes. 42 U.S.C. § 2000e-3(a)[2]; 29 U.S.C. § 623(d)[3]; <u>Brower v. Runyon</u>, 178 F.3d 1002, 1006 (8th Cir. 1999). The retaliation provisions of these statutes are designed to ensure that the statutes' protections are not undermined by retaliation against employees who use the statutory process to protect their rights. <u>Brower</u>, 178 F.3d at 1006. As such, an aggrieved employee may not bring a claim of retaliation under Title VII or the ADEA when the complaint triggering the alleged retaliatory conduct bears no relation to protections provided under either Title VII or the ADEA. <u>See</u> <u>id.</u> (conversation with EEO counselor did not constitute protected conduct inasmuch as plaintiff did not complain of nor imply illegal discrimination).

---

[2]The retaliation provision of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice *made an unlawful employment practice by this subchapter,* or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter.*

42 U.S.C. § 2000e-3(a) (emphasis added).

[3]The retaliation provision of the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice *made unlawful by this section*, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation *under this chapter.*

29 U.S.C. § 623(d) (emphasis added).

Here, plaintiff's August 2006 report to postal inspectors regarding alleged illegal dumping of mail bore no relation to protections provided under Title VII or the ADEA. Nor did it constitute participation in a proceeding or investigation under Title VII or the ADEA. Because plaintiff's report of mail-dumping did not relate to conduct protected under either Title VII or the ADEA, defendant is entitled to judgment as a matter of law on plaintiff's claim that defendant unlawfully retaliated against him under said statutes on account of his making such report.

2.    *2008 EEO Complaint*

Plaintiff first spoke with an EEO counselor in February 2008 and filed a formal EEO Complaint on March 19, 2008. In his EEO Complaint, plaintiff made claims of age discrimination and gender discrimination. Plaintiff also alleged that two supervisors threatened his job in February 2008 after learning that plaintiff had complained to the EEO, and that a reassignment request had been made on his behalf without his knowledge. No evidence is before the Court on these allegations of retaliation other than plaintiff's statements made in the EEO Complaint.

As set out above, to establish a *prima facie* case of retaliation under Title VII or the AEDA, plaintiff must show 1) that he engaged in protected conduct, 2) that reasonable employees would have found the challenged retaliatory action materially adverse, and 3) that the materially adverse action was causally

linked to the protected conduct.  <u>Weger</u>, 500 F.3d at 726 (citing <u>White</u>, 548 U.S. at 68); <u>Stewart</u>, 481 F.3d at 1042-43.  For the following reasons, plaintiff has failed to show that the challenged retaliatory action was materially adverse.

For alleged retaliatory conduct to be "materially adverse," that action must be shown to deter a reasonable employee from making or supporting a charge of discrimination.  <u>White</u>, 548 U.S. at 68; <u>Fercello v. County of Ramsey</u>, 612 F.3d 1069, 1077-78 (8th Cir. 2010).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  <u>White</u>, 548 U.S. at 67.  Without evidence of harm, instances of unpleasant and disagreeable conduct cannot constitute materially adverse action under <u>White</u>.  <u>Devin v. Schwan's Home Serv., Inc.</u>, 491 F.3d 778, 786 (8th Cir. 2007), <u>abrogated on other grounds by</u> <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031 (8th Cir. 2011).

Here, plaintiff has failed to demonstrate harm by the supervisors' alleged statements made in February 2008.  Threatened action without follow through is insufficient to constitute materially adverse conduct.  <u>Fercello</u>, 612 F.3d at 1080-81 (citing <u>Baloch v. Kempthorne</u>, 550 F.3d 1191, 1199 (D.C. Cir. 2008)).  This is especially true where, as here, there is no evidence of negative consequences stemming from the alleged action.  <u>Id.</u> at 1081.  In addition, plaintiff's *subjective* view that the supervisors'

statements constituted a threat in response to his complaint to the EEO is insufficient, without more, to establish that the challenged conduct is materially adverse. The standard under <u>White</u> is objective. <u>See</u> <u>Fercello</u>, 612 F.3d at 1081. Plaintiff has presented no evidence suggesting that this perceived threat caused any harm, let alone significant harm. Without evidence of harm, instances of unpleasant and disagreeable conduct cannot constitute materially adverse action under <u>White</u>. <u>Devin</u>, 491 F.3d at 786.

To the extent plaintiff claims that an unauthorized request for reassignment also constituted retaliatory conduct, there likewise exists no evidence before the Court showing negative consequences to have arisen therefrom. Plaintiff was never reassigned. In <u>Jones v. Fitzgerald</u>, 285 F.3d 705 (8th Cir. 2002), the Eighth Circuit held that an involuntary transfer which involved only minor changes in working conditions and did not involve a reduction in pay or benefits did not constitute an adverse employment action. <u>See</u> <u>id.</u> at 713. There cannot be adverse action, therefore, when an employee is only *considered* for an involuntary transfer, is not transferred, and experiences no change whatsoever in employment status.

To the extent plaintiff argues that defendant "continues to retaliate against [him] by refusing to consider [him] for overtime assignments" (Compl. at para. 35), the undisputed evidence shows the contrary. From March through May 2008, the quarter

immediately subsequent to plaintiff's pursuit of his EEO Complaint of Discrimination, plaintiff was provided seven opportunities for overtime and worked over ten hours in overtime. Of the thirteen other employees considered for overtime during that period, only one employee had more opportunities than plaintiff, and only five employees logged more overtime hours than plaintiff. Indeed, plaintiff has worked overtime and has earned overtime pay during most of the pay periods since 2006. To contend that defendant has refused to consider him for overtime assignments in retaliation for engaging in protected conduct is directly refuted by the record.

Finally, to the extent plaintiff claims that he was subjected to defendant's retaliatory bullying tactics prior to February 2008, such claim must fail. No allegedly adverse actions that preceded plaintiff's complaint to the EEO could have been in retaliation for the later-filed complaint. <u>Stewart</u>, 481 F.3d at 1046.

Therefore, because the undisputed evidence before the Court shows that the conduct of which plaintiff complains did not produce injury or harm so significant that it would deter a reasonable employee from making or supporting a charge of discrimination, such conduct was not materially adverse and defendant is entitled to summary judgment to the extent plaintiff's claim may be construed to allege that such conduct constituted unlawful retaliation under Title VII and/or the ADEA.

C.  Sex Discrimination

Plaintiff claims that he was subjected to disparate treatment in his employment on account of his sex. Plaintiff specifically claims in the instant Complaint that he was denied overtime and that "[m]any of the benefactors of overtime are Female." (Compl. at para. 36.) Plaintiff also claimed in his EEO Complaint of Discrimination that he was denied a requested transfer because of an unfounded report of attendance problems, but that a female employee with recorded attendance problems was awarded a transfer.

Title VII prohibits an employer from discriminating against any individual on the basis of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). A claim of unlawful sex discrimination may be established through direct or indirect evidence. Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 907 (8th Cir. 2006). Plaintiff does not contend, and the record does not show, that he has any direct proof of adverse employment action on account of his sex. As such, because any evidence of sex discrimination would be indirect, the Court must apply the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jackson v. United Parcel Serv., Inc., 643 F.3d 1081, 1086 (8th Cir. 2011). Therefore, in order to survive defendant's Motion for Summary Judgment, plaintiff must first establish a *prima facie* case of discrimination. If he is able to do so, defendant may then

rebut the *prima facie* case by articulating a non-discriminatory reason for its action. Plaintiff must then show that the defendant's proffered reason for adverse action was merely pretext for discrimination. Id. At all times, plaintiff bears the ultimate burden of proving that he was unlawfully discriminated against. Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1107-08 (8th Cir. 1998).

Defendant contends that plaintiff cannot establish a *prima facie* case of sex discrimination. To make a *prima facie* case of sex discrimination in the circumstances of this case, plaintiff must show that (1) he was a member of a protected group, (2) he was qualified to perform his job, (3) he suffered an adverse employment action, and (4) he was treated differently from similarly situated females. Tenge, 446 F.3d at 910. Plaintiff bears the burden of producing specific, tangible evidence showing a disparity in the treatment of similarly situated employees. Philip v. Ford Motor Co., 413 F.3d 766, 768 (8th Cir. 2005). Plaintiff has failed to meet such burden here.

Plaintiff claims that female employees were treated more favorably than him in that they regularly received overtime in contrast to plaintiff being continually denied overtime. Plaintiff has failed to demonstrate, however, that these female employees held the same position as plaintiff or requested the same overtime categories as plaintiff. In addition, the two specific instances

of denied overtime opportunities of which plaintiff complains in the instant Complaint were allegedly given to two male employees. (Compl. at paras. 30, 34.)

Further, the undisputed evidence shows plaintiff to have been provided opportunities for overtime and to have received overtime pay for most pay periods since 2006. The undisputed evidence also shows that from March to May 2008, plaintiff was provided seven opportunities for overtime and worked over ten hours in overtime. At least four of the thirteen other employees considered for overtime during that period were male; and of the known female employees who worked overtime during that period, none had more overtime opportunities than plaintiff nor worked more overtime hours. Indeed, when considering those employees whose gender is unreported, none had more overtime opportunities than plaintiff and only two employees worked more overtime hours. To contend that defendant refused to consider plaintiff for overtime assignments and favored female employees for overtime work is directly refuted by the record.

To the extent plaintiff claims that a female employee was awarded a transfer despite recorded attendance problems while he was denied a transfer on account of an unfounded report of unacceptable attendance, plaintiff has likewise failed to show disparity in treatment of similarly situated employees. First, the undisputed evidence shows plaintiff to have requested a transfer to

the Fenton branch, while the female employee was awarded a transfer to the Hazelwood branch. Because the determination as to whether to accept a transfer is made by the receiving branch, the Hazelwood branch's decision was separate from that of the Fenton branch regarding whether to accept a transfer. Where separate entities make separate and independent employment decisions, it cannot be said that employees subject to such separate decisions are similarly situated. In addition, plaintiff does not know the specific position at Hazelwood to which this employee was transferred. Cf. LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 694 (8th Cir. 2001) (persons who work in different positions not similarly situated). In sum, plaintiff simply has produced no evidence indicating that a similarly situated female employee was treated more favorably than he in similar circumstances. Unsubstantiated allegations of similarity are insufficient. Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 479 (8th Cir. 2004).

Because plaintiff has produced no evidence indicating that similarly situated female employees were treated more favorably than he in similar circumstances, he has failed to establish a *prima face* case of sex discrimination in the circumstances of this case, and his claim of such discrimination must fail. Philip, 413 F.3d at 768.

D.    Age Discrimination

Plaintiff claims that he was subjected to discrimination

in his employment on account of his age.  Plaintiff specifically claims in the instant Complaint that he was repeatedly denied overtime and that "[m]uch younger employees with less seniority are regularly given overtime[.]" (Compl. at para. 25.)  Plaintiff also claimed in his EEC Complaint of Discrimination that he was denied a requested transfer because of an unfounded report of attendance problems, but that a younger employee with recorded attendance problems was awarded a transfer.

The ADEA prohibits an employer from discriminating on the basis of age if that person is over forty years old.  29 U.S.C. §§ 623(a), 631(a); Chambers v. Metropolitan Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003).  A claim of unlawful age discrimination may be established through direct or indirect evidence.  Bearden v. International Paper Co., 529 F.3d 828, 830 (8th Cir. 2008).  To the extent plaintiff claims that Deborah Hayden's remark--that plaintiff was "slow and deliberate"--evinces age-based discriminatory animus, such comment is too vague in itself to create a reasonable inference of age discrimination.  See Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 542 (8th Cir. 1991).  Plaintiff otherwise does not proffer any direct evidence of adverse employment action taken on account of his age.  As such, because any evidence of age discrimination would be indirect, the Court must apply the familiar McDonnell Douglas burden-shifting analysis.  See Riley v. Lance, Inc., 518 F.3d 996, 1000 (8th Cir.

2008).  Therefore, in order to survive defendant's Motion for Summary Judgment, plaintiff must first be able to establish a *prima facie* case of discrimination.  If he is able to do so, the burden then shifts to defendant to produce evidence that the adverse action occurred for a legitimate, non-discriminatory reason.  If defendant comes forward with such evidence, the presumption of discrimination raised by plaintiff's *prima facie* case would drop out of the case and plaintiff would need to show by a preponderance of the evidence that defendant's reason for adverse action was pretext for discrimination.  <u>Id.</u>  At all times, plaintiff bears the ultimate burden of proving that he was unlawfully discriminated against.  <u>Rose-Maston</u>, 133 F.3d at 1107-08.

Defendant contends that plaintiff cannot establish a *prima facie* case of age discrimination.  To make a *prima facie* case of age discrimination in the circumstances of this case, plaintiff must show that (1) he was at least forty years old, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the class were treated more favorably.  <u>Thomas v. Corwin</u>, 483 F.3d 516, 528 (8th Cir. 2007).  Plaintiff bears the burden of producing specific, tangible evidence showing a disparity in the treatment of similarly situated employees.  <u>See</u> <u>Philip</u>, 413 F.3d at 768.  Plaintiff has failed to meet such burden here.

Plaintiff claims that younger employees were treated more

favorably than him in that they regularly received overtime in contrast to plaintiff being continually denied overtime.  Plaintiff has failed to demonstrate, however, that these employees held the same position as plaintiff or requested the same overtime categories as plaintiff.  Indeed, plaintiff cannot establish that such employees were indeed outside the protected class inasmuch as he does not know the ages of the employees at issue but merely believes them to be less than forty years of age.  Speculative allegations, with nothing more, are insufficient to defeat summary judgment.  See Bearden, 529 F.3d at 832 (plaintiff's asserted belief that she was replaced by younger employee was insufficient to establish inference of age discrimination); Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (to withstand summary judgment, plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy); see also Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025, 1028 (8th Cir. 2006) (speculation and conjecture are insufficient to defeat summary judgment).

In addition, the undisputed evidence shows plaintiff to have been provided opportunities for overtime and to have received overtime pay for most pay periods since 2006.  Specific evidence in the record also shows that from March to May 2008, plaintiff was provided seven opportunities for overtime and worked over ten hours

in overtime.  Of the thirteen other employees considered for overtime during that period, no more than three employees were under the age of forty, and plaintiff had more opportunities and worked more hours than those three employees, combined.  To contend that defendant refused to consider plaintiff for overtime assignments and favored younger employees for overtime work is directly refuted by the record.

To the extent plaintiff claims that a younger employee was awarded a transfer despite recorded attendance problems while he was denied a transfer on account of an unfounded report of unacceptable attendance, plaintiff has likewise failed to show disparity in treatment of similarly situated employees.  First, the undisputed evidence shows plaintiff to have requested a transfer to the Fenton branch, while the younger employee was awarded a transfer to the Hazelwood branch.  Because the determination as to whether to accept a transfer is made by the receiving branch, the Hazelwood branch of the post office made a decision separate from that of the Fenton branch regarding whether to accept a transfer. Where separate entities make separate and independent employment decisions, it cannot be said the employees subject to such separate decisions are similarly situated.  In addition, plaintiff does not know the specific position at Hazelwood to which this employee was transferred.  Cf. LaCroix, 240 F.3d at 694 (persons who work in different positions not similarly situated).  In sum, plaintiff

simply has produced no evidence indicating that a similarly situated younger employee was treated more favorably than he in similar circumstances. Unsubstantiated allegations of similarity are insufficient. <u>Cherry</u>, 361 F.3d at 479.

Because plaintiff has produced no evidence indicating that similarly situated younger employees were treated more favorably than he in similar circumstances, he has failed to establish a *prima face* case of age discrimination in the circumstances of this case, and his claim of such discrimination must fail. <u>Thomas</u>, 483 F.3d at 529; <u>Philip</u>, 413 F.3d at 768.

E.    <u>Harassment/Hostile Work Environment</u>

Plaintiff claims that defendant unlawfully subjected him to harassment and a hostile work environment on account of his age and sex, as demonstrated by the bullying tactics set out above.

To establish a prima facie case that he was subjected to a hostile work environment on account of his age and/or sex, plaintiff must show that 1) he is a member of a protected group, 2) unwelcome harassment occurred, 3) a causal nexus existed between the harassment and his protected group status, and 4) the harassment affected a term, condition or privilege of employment. <u>Hesse v. Avis Rent A Car Sys., Inc.</u>, 394 F.3d 624, 629 (8th Cir. 2005); <u>Weyers v. Lear Operations Corp.</u>, 359 F.3d 1049, 1056 n.6 (8th Cir. 2004) (hostile work environment claims, whether based on age or sex, are analyzed under the same general framework). The

conduct must have been severe or pervasive enough to create an objectively hostile or abusive work environment. <u>Hesse</u>, 394 F.3d at 629. "The critical issue is whether members of [a protected group] are subjected to unfavorable employment conditions to which members of the other [group] are not." <u>Id.</u> at 630. "Generalized harassment in the workplace is not illegal[.]" <u>Id.</u>; <u>see also</u> <u>Breeding v. Arthur J. Gallagher & Co.</u>, 164 F.3d 1151, 1158-59 (8th Cir. 1999), <u>abrogated on other grounds by</u> <u>Torgerson</u>, 643 F.3d 1031 (8th Cir. 2011).

Here, the defendant's bullying tactics as alleged by plaintiff are insufficient to support a claim of harassment based on age or sex. While these alleged conditions are not desirable, plaintiff has presented no evidence demonstrating that defendant's alleged isolation of plaintiff, over-scrutinization of his work, alteration of his work shift, and/or withholding of training or overtime *were based on* plaintiff's age or sex. <u>See</u> <u>Breeding</u>, 164 F.3d at 1159. Indeed, plaintiff asserts that such harassment and bullying occurred on account of him angering his manager, Deborah Hayden. Because no evidence exists in the record that the alleged unfavorable employment conditions were on account of plaintiff's protected status as a male or as an individual over the age of forty, defendant is entitled to judgment as a matter of law on plaintiff's claims otherwise.

To the extent plaintiff's claim can be construed to

allege that defendant created a hostile work environment in retaliation for engaging in protected conduct, as fully discussed _supra_ at Section III.B, plaintiff has failed to demonstrate that defendant's alleged retaliatory conduct produced injury or harm so significant that it would deter a reasonable employee from making or supporting a charge of discrimination.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Postmaster General Patrick R. Donahoe's Motion for Summary Judgment (Doc. #18) is granted in all respects.

Judgment shall be entered accordingly.


_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE


Dated this _8th_ day of November, 2011.